COURT OF APPEALS OF VIRGINIA

Present:   Judges Clements, Felton and McClanahan
Argued at Alexandria, Virginia


STEVE FREDERICK WALSHAW, S/K/A
 STEVEN F. WALSHAW
                                                         OPINION BY
v.        Record No. 0605-03-4              JUDGE WALTER S. FELTON, JR.
                                                       OCTOBER 12, 2004
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Richard B. Potter, Judge

Michael F. Devine (James G. Connell, III; Devine & Connell, P.L.C.,
on briefs), for appellant.

Stephen R. McCullough, Assistant Attorney General (Jerry W.
Kilgore, Attorney General, on brief), for appellee.


On November 26, 2002, a jury convicted Steve Frederick Walshaw (appellant), sometimes

known as Steven F. Walshaw, of first-degree murder for the strangulation death of Karen Tegeler,

and fixed his sentence at life imprisonment.  On appeal, appellant contends that the short form

indictment on which he was tried for first-degree murder was deficient because it failed to allege

malice and premeditation and that the trial court erred in its instructions to the jury on voluntary

manslaughter.  Finding no error, we affirm his conviction.

BACKGROUND

On January 23, 2002, appellant killed Karen Paulette Tegeler, his girlfriend of three

years.  He gave a detailed confession to the police admitting that he killed Tegeler.  He described

how their relationship had become strained prior to Tegeler's death, how he suspected her of

infidelity and had confronted her about it.  He admitted to the police that he had contemplated

killing her a month before he actually did.

On the day appellant killed Tegeler, he found a Valentine's card addressed to him in Tegeler's condominium. Inside the card was a handwritten note from Tegeler informing appellant that their relationship was over and that he had to move out of the condominium. Later that evening when Tegeler returned to the condominium from work, the two had sexual relations. Shortly thereafter while Tegeler was napping, appellant stepped outside, smoked a cigarette, and reread the note. He became "pretty upset" and then "he just lost it." He went back into the bedroom, laid beside Tegeler and then, with her head resting on his arm, strangled her until she was dead. Tegeler tried to resist, and the two struggled for five to seven minutes during which time Tegeler fell off the bed. When appellant knew Tegeler was dead, he left to buy some beer. He told the police that he contemplated suicide by throwing himself in front of a train, but there were no trains. He went to a friend's house and confessed the murder to her. She called the police, who then arrested him.

The indictment on which appellant was prosecuted for murder stated:

> The GRAND JURY . . . charges that on or about January 23, 2002, in the aforesaid Judicial Circuit, the accused, STEVE FREDERICK WALSHAW did feloniously kill and murder one Karen Paulette Tegeler, in violation of Virginia Code Section 18.2-32.

After the close of all the evidence and during the presentation of the jury instructions to the trial court, appellant objected that "[t]he indictment alleges only manslaughter . . ." and "does not allege premeditation and or malice," the elements necessary to convict him of first-degree murder. The trial court overruled his contention that the jury should only be instructed on voluntary manslaughter.

The trial court granted Instruction B-1, which followed the format of I Virginia Model Jury Instructions, Criminal G.33.700 (1998 repl. ed. with 1999 supp.), and rejected Instruction B, an alternative murder instruction offered by appellant. Appellant objected to the portion of

Instruction B-1 relating to voluntary manslaughter, arguing that it misallocated the burden of proof for voluntary manslaughter and thus erroneously stated the law. The trial court overruled appellant's objection.

The jury convicted appellant of first-degree murder and fixed his sentence at life imprisonment. The trial court entered judgment on the jury's verdict.

ANALYSIS

A. SHORT FORM MURDER INDICTMENT

"When considering on appeal whether an indictment charged a particular offense, we limit our scrutiny to the face of the document." Moore v. Commonwealth, 27 Va. App. 192, 198, 497 S.E.2d 908, 910-11 (1998).

At trial, appellant contended that he could not lawfully be convicted of or punished for an offense greater than voluntary manslaughter because the statutory short form murder indictment failed to contain the words "willful, deliberate and premeditated" or "with malice." He contends that these defects denied him adequate notice of the charge against him as required by the United States Constitution and Ring v. Arizona, 536 U.S. 584 (2002); Apprendi v. New Jersey, 530 U.S. 466 (2000); and Jones v. United States, 526 U.S. 227 (1999).

Both the United States and Virginia Constitutions guarantee a criminal defendant the right "to be advised of the cause and nature of the accusation lodged against him."[1] Simpson v. Commonwealth, 221 Va. 109, 115, 267 S.E.2d 134, 139 (1980) (upholding use of Virginia short's form murder indictment in conviction of first-degree murder and robbery). However, our Supreme Court has held that there is no constitutional or statutory requirement

_____

[1] "In all criminal prosecutions the accused shall enjoy the right to . . . be informed of the nature and cause of the accusation." U.S. Const. amend. VI.
    "That in all criminal prosecutions a man hath the right to demand the cause and nature of his accusation." Va. Const. art. I, § 8.

"that the indictment charge the degree of murder alleged or use the specific statutory language constituting that degree of offense." Id.

The purpose of an indictment "'is to give an accused notice of the nature and character of the accusations against him in order that he can adequately prepare to defend against his accuser.'" King v. Commonwealth, 40 Va. App. 193, 198, 578 S.E.2d 803, 806 (2003) (quoting Sims v. Commonwealth, 28 Va. App. 611, 619, 507 S.E.2d 648, 652 (1998)). Code § 19.2-220 provides, in pertinent part, that:

> The indictment or information shall be a plain, concise and definite written statement . . . describing the offense charged . . . . In describing the offense, . . . the indictment or information may state so much of the common law or statutory definition of the offense as is sufficient to advise what offense is charged.

Rule 3A:6(a) also requires the indictment to "cite the statute or ordinance that defines the offense . . . ." See also Reed v. Commonwealth, 3 Va. App. 665, 667, 353 S.E.2d 166, 167-68 (1987). "[T]he inference to be drawn from the provisions of Code § 19.2-220 and Rule 3A:6(a) is clearly that incorporation by . . . reference of the statute cited in the indictment" provides adequate notice of the charges against the accused. Thomas v. Commonwealth, 37 Va. App. 748, 753, 561 S.E.2d 56, 58 (2002). Here, appellant clearly had adequate notice of the offense for which he was to stand trial.

The indictment on which appellant was tried precisely follows Code § 19.2-221, providing short form indictments for murder and voluntary manslaughter. "While any form of presentment, indictment or information which informs the accused of the nature and cause of the accusation against him shall be good the [short form indictment] shall be deemed sufficient for murder . . . ." Code § 19.2-221. The statute "specifically validates murder indictments which allege only that the defendant 'feloniously did kill and murder' the victim." Simpson, 221 Va. at 115, 267 S.E.2d at 138-39; see also Satcher v. Commonwealth, 244 Va. 220, 257, 421 S.E.2d

- 4 -

821, 843 (1992) (affirming conviction under short form indictment filed pursuant to Code

§ 19.2-221 for first-degree murder).

> "If, therefore, any proposition of law can be considered as settled by decision and no longer open to debate" . . . then the proposition that the short statutory form of indictment for murder includes the charge of murder in the first degree is now the established law in this Commonwealth. . . .

Barber v. Commonwealth, 206 Va. 241, 247, 142 S.E.2d 484, 489 (1965) (quoting Hobson v.

Youell, 177 Va. 906, 912, 15 S.E.2d 76, 78 (1941)).

Our Supreme Court has consistently held that it is unnecessary to include the words

"willfully, deliberately and premeditatedly" or "malice" in the indictment to convict a defendant

of murder in violation of Code § 18.2-32. Simpson, 221 Va. at 115, 267 S.E.2d at 139. See

Hartman v. Lee, 283 F.3d 190, 199 (4th Cir. 2002), cert denied, 537 U.S. 1114 (2003); Satcher,

244 Va. at 257, 421 S.E.2d at 843.

The statutory short form of the indictment fully informed appellant "of the nature and

cause of the accusation against him." See Code § 19.2-221. The indictment clearly alleges that

appellant "did feloniously kill and murder one Karen Paulette Tegeler, in violation of Code

§ 18.2-32." It specifically refers to Code § 18.2-32, which provides that "murder . . . by any willful,

deliberate, and premeditated killing . . . is murder in the first degree . . . . All murder other than

capital murder and murder in the first degree . . . is murder in the second degree." The clear

language of the indictment gave appellant unequivocal notice that he was charged with the

first-degree murder of Tegeler, and gave him notice of the elements of the offense necessary for the

Commonwealth to prove in order to convict him.

Moreover, at appellant's arraignment on the indictment prior to the beginning of the trial,

the trial court informed him that he was charged with murder. In response to the specific inquiry

by the trial court of whether he understood the charge for which he was standing trial, appellant

stated that he understood the nature of the charge against him. He further stated that he had discussed the charge fully with his attorney.[2] When the trial court asked appellant if he was entering his not guilty plea freely and voluntarily, he answered "I'm entering it on my own accord, freely, yeah. I'm not pleading to first degree." Based on appellant's own statements, it is clear that he knew that the charge against him was the first-degree murder of Karen Paulette Tegeler in violation of Code § 18.2-32.

Appellant argues, however, that Apprendi v. New Jersey, 530 U.S. 466 (2000); Ring v. Arizona, 536 U.S. 584 (2002); and Jones v. United States, 526 U.S. 227 (1999), provide that there is a constitutional requirement that all of the elements necessary to prove murder must be specified in the indictment, and failing to do so, the indictment is defective.[3] An examination of Apprendi and the other decisions relied on by appellant demonstrate that his argument is without merit.

In Apprendi, the issue before the United States Supreme Court was whether the sentencing judge could impose a sentence in excess of the maximum for the offense of which the defendant had been indicted and convicted under New Jersey law. In Apprendi, the defendant was indicted and convicted of firing a gun into the home of an African-American family that had

---

[2] During oral argument on appeal, appellant's counsel admitted that prior to trial he knew the Commonwealth was seeking a first-degree murder conviction.

[3] In each of the cases cited by appellant, the accused was convicted of a crime charged in the indictment, and the trial judge determined the sentence to be imposed. The sentencing judge was permitted to find aggravating sentencing factors by a preponderance of the evidence, rather than beyond a reasonable doubt. See also Blakely v. Washington, ___ U.S. ___ (June 24, 2004). In the federal system and the vast majority of states, the trial judge sentences the convicted person, even in cases where a jury determines guilt. We note that Virginia has since colonial times provided for jury sentencing in cases tried by the jury. See Walker v. Commonwealth, 25 Va. App. 50, 61-62, 486 S.E.2d 126, 132 (1997). In Virginia, neither the jury nor the trial court can sentence a person to a greater punishment than that established by the legislature for the crime of which that person was convicted. See Abdo v. Commonwealth, 218 Va. 473, 479, 237 S.E.2d 900, 903 (1977).

previously moved into an all-white neighborhood. Apprendi, 530 U.S. at 469. Pursuant to a plea agreement, the defendant pled guilty to three firearms offenses which carried a possible maximum sentence of 20 years in prison. Id. at 470. The plea agreement reserved to the government a right to seek an enhanced punishment on the ground that one of the charges was committed with "a biased purpose." Id. A different statute permitted the trial judge to sentence a defendant to a separate term of incarceration if the judge found by a preponderance of the evidence that the defendant committed the crime with a racial animus. Id. at 469. The trial court found by a preponderance of the evidence that aggravating factors existed, and sentenced the defendant to thirty years in prison, ten years longer than the maximum sentence for the offense of which he was convicted. Id.

Arguing that Apprendi constitutes a "sea change" in the long established precedent upholding Virginia's short form indictment, appellant relies on the following statement from Apprendi:

> "[U]nder the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime *must be charged in an indictment*, submitted to a jury, and proven beyond a reasonable doubt." The Fourteenth Amendment commands the same answer in this case involving a state statute.

Id. at 476 (emphasis added by appellant) (quoting Jones, 526 U.S. at 243 n.6). However, appellant's focus on the words "must be charged in the indictment" does not obscure the meaning of Apprendi. Apprendi implicated two constitutional provisions: the right to a jury trial and the right to compel the state to meet the "beyond a reasonable doubt" standard of proof. Id. at 476-77. Appellant's emphasis on the statement that any enhanced sentencing factor "must be charged in the indictment" in the Court's several opinions ignores that Jones was a federal prosecution and that Apprendi's reference to Jones does not reflect Jones' actual holding. In

Apprendi, the Court concluded that the New Jersey law was an "unacceptable departure from the jury tradition." It found that under the New Jersey judge sentencing procedure, the sentencing judge could sentence a convicted person to a penalty beyond the maximum authorized for the charge of which he was convicted, based on facts never submitted to a jury and found to exist by the sentencing judge by only a preponderance of the evidence rather than beyond a reasonable doubt. Id. at 497.

The indictment on which appellant was convicted by the jury in this case clearly charged first-degree murder. Both appellant and his counsel acknowledged that each was aware of the charge appellant faced. The jury found that each element of the offense charged in the indictment had been established beyond a reasonable doubt. Finally, appellant's sentence was fixed by the jury which had determined his guilt within the statutory range of punishment authorized by Code § 18.2-32, the crime of which he was specifically charged in the indictment. Unlike Apprendi, appellant did not face an enhanced punishment imposed by a judge beyond the statutory maximum for the crime of which he was convicted.

Similarly, the statutory sentencing scheme at issue in Ring is not relevant to Virginia's short form indictment for murder. In Ring, the United States Supreme Court struck down Arizona's sentencing scheme in death penalty cases which permitted the trial judge to find aggravating circumstances, not submitted to the jury, as a basis to sentence the defendant to the death penalty. The Court held that the Sixth Amendment mandated that "[c]apital defendants, no less than non-capital defendants, . . . are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment." Ring, 536 U.S. at 589.

Appellant's reliance on federal cases in support of his defective indictment argument is also misplaced. In support of his argument, appellant cites Harris v. United States, 536 U.S. 545 (2002) (prosecution for violating federal drug and firearms laws); and United States v. Higgs,

353 F.3d 281, 297 (4th Cir. 2003) (prosecution for capital murder for homicides that occurred on federal land). Like Jones, each of these cases was a federal prosecution to which the Grand Jury Clause of the Fifth Amendment applied,[4] and are irrelevant to the issue here: whether a *state* charging document must mechanically list all of the elements of an offense or whether the state may utilize a simplified charging instrument. Appellant's reliance on Higgs from the Fourth Circuit is particularly inapposite as that Court recently rejected a similar constitutional challenge to the North Carolina short form indictment. Allen v. Lee, 366 F.3d 319 (4th Cir. 2004).[5] In Allen, the Fourth Circuit dismissed an argument similar to that raised by appellant here, concluding that "[a] short-form indictment alleging elements of common law murder is sufficient to inform the defendant of the charge against him, and thus satisfies the requirements of the Sixth Amendment and the Due Process Clause." Id. at 324 (citing Hartman, 283 F.3d at 192).

Likewise, the North Carolina Supreme Court, facing a similar Apprendi inspired challenge to its short form murder indictment, upheld the North Carolina short form indictment statute. State v. Hunt, 582 S.E.2d 593, 597 (N.C. 2003) (holding that Apprendi and Ring do not change the constitutionality of North Carolina's short form indictment).

We conclude that the short form statutory indictment on which appellant was convicted fully informed him of the nature and cause of the accusation against him as required by the

---

[4] As this Court has previously noted, the Grand Jury Clause of the United States Constitution applies only to federal prosecutions. Wilson v. Commonwealth, 31 Va. App. 495, 504 n.2, 525 S.E.2d 1, 5 n.2 (2000) (citing Hurtado v. California, 110 U.S. 516 (1884)).

[5] In Allen, the defendant asserted "that the short-form indictment failed to allege each element of the crime of first-degree murder and any aggravating circumstance supporting the death sentence. He contends that these defects render his first-degree murder conviction and death sentence invalid under Jones v. United States, 526 U.S. 227 (1999), and Apprendi v. New Jersey, 530 U.S. 466 (2000)." Allen, 366 F.3d at 323.

United States and Virginia Constitutions.[6] The absence of the words "malice" and

"premeditation" in the indictment did not render it defective to charge first-degree murder. It

was sufficient that it alleged that appellant "murdered" Tegeler and that it referred to Code

§ 18.2-32. Finding no constitutional defect in appellant's indictment, we affirm the judgment of

the trial court.

## B. JURY INSTRUCTIONS

### 1.

Appellant also asserts that the trial court erred in granting Instruction B-1,[7] a finding

instruction in homicide cases patterned after Virginia Model Jury Instruction G.33.700, and in

failing to grant his Instruction B.

---

[6] To the extent appellant required additional particulars of the charge to defend himself, he could have requested a bill of particulars. Hurd v. Commonwealth, 159 Va. 880, 885, 165 S.E. 536, 538 (1932). He did not do so.

[7] Jury Instruction B-1 provided that:

> Mr. Walshaw is charged with the crime of first degree murder. The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:
>
> (1) That Mr. Walshaw killed Karen Tegeler; and
>
> (2) That the killing was malicious; and
>
> (3) That the killing was willful, deliberate, and premeditated.
>
> If you find from the evidence that the Commonwealth has proved beyond a reasonable doubt each of the above elements of the offenses as charged, then you shall find Mr. Walshaw guilty of first degree murder, but you shall not fix the punishment until you have returned your verdict and heard further instruction.
>
> If you find from the evidence that the Commonwealth has proved beyond a reasonable doubt each of the first two elements of the offense as charged but you do not find beyond a reasonable doubt that the killing was willful, deliberate, and premeditated, then you shall find Mr. Walshaw guilty of second degree murder,

"The trial judge has broad discretion in giving or denying instructions requested." Gaines v. Commonwealth, 39 Va. App. 562, 568, 574 S.E.2d 775, 778 (2003) (*en banc*) (approving a similar finding instruction on first-degree murder which followed the format suggested in Model Jury Instruction G.33.700). "A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" Darnell v. Commonwealth, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988) (citation omitted). "No instruction should be given that 'incorrectly states the applicable law or which would be confusing or misleading to the jury.'" Mouberry v. Commonwealth, 39 Va. App. 576, 582, 575 S.E.2d 567, 569 (2003) (quoting Bruce v. Commonwealth, 9 Va. App. 298, 300, 387 S.E.2d 279, 280 (1990)).

Applying this standard of review, we find no error in the trial court's granting Instruction B-1 and denying appellant's proffered Instruction B.

Appellant contends that Instruction B-1 misstates Virginia law relating to voluntary manslaughter in the following language:

---

but you shall not fix the punishment until you have returned your verdict and heard further instruction.

If you find that the Commonwealth has failed to prove beyond a reasonable doubt that the killing was malicious but that the Commonwealth has proved beyond a reasonable doubt that the defendant killed Ms. Tegeler and further:

(1)  That the killing was the result of an intentional act; and

(2)  That the killing was committed while in the sudden heat of passion upon reasonable provocation;

then you shall find Mr. Walshaw guilty of voluntary manslaughter, but you shall not fix the punishment until you have returned your verdict and heard further instruction.

If you find that the Commonwealth has failed to prove beyond a reasonable doubt any of the above offenses, then you shall find Mr. Walshaw not guilty.

- 11 -

> If you find that the Commonwealth has failed to prove beyond a reasonable doubt that the killing was malicious but that the Commonwealth has proved beyond a reasonable doubt that the defendant killed Ms. Tegeler and further:
>
> (1) That the killing was the result of an intentional act; and
>
> (2) That the killing was committed while in the sudden heat of passion upon reasonable provocation;
>
> then you shall find Mr. Walshaw guilty of voluntary manslaughter, but you shall not fix the punishment until you have returned your verdict and heard further instruction.

Relying on Mullaney v. Wilbur, 421 U.S. 684 (1975), appellant contends the trial court erred "by instructing the jury that in order to return a verdict for the lesser included offense of manslaughter, the jury must find that the Commonwealth proved the presence of heat of passion beyond a reasonable doubt." In support of this contention, he argues that Instruction B-1 misstates Virginia law by improperly placing the burden of proof of "heat of passion" beyond a reasonable doubt on the Commonwealth, when the burden should be on the Commonwealth to prove malice beyond a reasonable doubt and to disprove the heat of passion beyond a reasonable doubt.

Appellant's reliance on Mullaney for the proposition that Instruction B-1 was improper is misplaced. It is true that the Court in Mullaney held that the "Due Process Clause requires the prosecution to prove beyond a reasonable doubt the *absence* of the heat of passion on sudden provocation when the issue is properly presented in a homicide case." Id. at 704 (emphasis added). However, Mullaney's holding was tailored to answer the following question: What must the prosecution prove in order to sustain a charge of *murder*? In Mullaney, the defendant contended that his conviction for murder should be overturned because the jury was instructed that, under Maine law, "malice aforethought was to be *conclusively* implied unless the defendant proved by a fair preponderance of the evidence that he acted in the heat of passion on sudden provocation." Id. at 686 (emphasis added). The Court determined that this instruction violated

- 12 -

the defendant's due process rights because it shifted the burden of persuasion on the element of malice—an element essential to the crime of murder—to the defendant by requiring the defendant to prove by a preponderance of the evidence that he acted in the heat of passion. See Patterson v. New York, 432 U.S. 197, 215-16 (1977). Because malice and heat of passion are mutually exclusive elements under Maine law, see Mullaney, 421 U.S. at 686-87, as they are in Virginia, see Hodge v. Commonwealth, 217 Va. 338, 345, 228 S.E.2d 692, 697 (1976), the Court's holding requiring the prosecution to prove the absence of heat of passion to sustain a charge of murder was tantamount to requiring the prosecution to prove the presence of malice. See Patterson, 432 U.S. at 216. Thus, Mullaney teaches that, in order to prove murder in a case in which the issue of heat of passion has been properly raised by the evidence, the prosecution must prove malice beyond a reasonable doubt or, to state it differently, must prove the absence of heat of passion beyond a reasonable doubt. See Mullaney, 421 U.S. at 703; Hodge, 217 Va. at 341, 228 S.E.2d at 695. The Commonwealth always has the burden of proving the culpable state of mind, "and *this burden never shifts*." Hodge, 217 Va. at 342, 228 S.E.2d at 695 (emphasis in original).

Instruction B-1 instructed the jury that it was required to find malice in order to convict of murder. The jury's finding that malice existed *a priori* excluded the existence of heat of passion. Moreover, the instruction provided that if the jury found the Commonwealth failed to prove beyond a reasonable doubt that the killing was malicious, it was still required to determine beyond a reasonable doubt whether the evidence proved appellant intentionally killed Tegeler without lawful justification or excuse. The instruction further provided that if the Commonwealth failed to prove the existence of malice beyond a reasonable doubt, then the greatest degree of homicide of which it could convict appellant was voluntary manslaughter.

Even if, as Walshaw argues, Instruction B-1 erroneously placed the burden of proving the existence of heat of passion beyond a reasonable doubt on the Commonwealth, he suffered no prejudice. At most, Instruction B-1 placed on the Commonwealth a burden greater than the law requires, as the Commonwealth was obligated only to prove beyond a reasonable doubt that Walshaw intentionally killed Tegeler without lawful justification or excuse in order to obtain a conviction for voluntary manslaughter. See Brown v. Commonwealth, 86 Va. 466, 473, 10 S.E. 745, 747 (1890). In order to obtain a conviction for murder, the Commonwealth was required to prove beyond a reasonable doubt that Walshaw acted with malice, or said differently, to establish the non-existence of passion.

Instruction B-1 read as a whole placed the burden of proof on the Commonwealth to prove beyond a reasonable doubt each element of the homicide offenses. See Wright v. Commonwealth, 234 Va. 627, 630, 363 S.E.2d 711, 712 (1988). Moreover, when a trial court grants numerous instructions, the jury must "consider the instructions as a whole and in the light of the evidence applicable to the issues presented." Rollston v. Commonwealth, 11 Va. App. 535, 541, 399 S.E.2d 823, 826 (1991). The trial court gave separate instructions defining malice and the heat of passion, explaining that malice was the difference between murder and manslaughter. An additional instruction clearly stated that "[h]eat of passion excludes malice." From these instructions and the evidence presented, the jury concluded that appellant did not possess the lower state of culpability of acting in the heat of passion, but found instead that the evidence proved beyond a reasonable doubt that he acted maliciously and that his intentional killing of Tegeler was willful, deliberate, and premeditated.

Viewing the instructions as a whole, "it is inconceivable that the jury could have misunderstood where the ultimate burden of proof rested." Hodge, 217 Va. at 347, 228 S.E.2d at 698.

- 14 -

Instruction B-1 did not impermissibly shift the burden of proof of any element of the offense of voluntary manslaughter to appellant, nor did it increase the quantum of proof necessary for the jury to find that he acted in the heat of passion, nor did it violate the Due Process Clauses of the United States and Virginia Constitutions.

Accordingly, we conclude that the trial court did not err in granting Instruction B-1.

2.

Appellant also argues that the trial court erred in failing to grant his Instruction B. Because we find that Instruction B-1 read together with other instructions given fairly explained the elements of the homicide offenses at issue to the jury, we find no error in the trial court refusing appellant's alternative Instruction B. We recognize that "[e]ach party is entitled to have jury instructions upon vital points in language chosen by it, *if the instruction is a correct statement of the law*." Broady v. Commonwealth, 16 Va. App. 281, 291, 429 S.E.2d 468, 474 (1993) (emphasis added). "A trial judge does not abuse his discretion by failing to modify a correct statement of the law on the mere chance that a jury may not follow clearly written instructions. We presume the jury will understand, and will follow their instructions." Gaines, 39 Va. App. at 567, 574 S.E.2d at 777 (citing Rinehart & Dennis Co. v. Brown, 137 Va. 670, 680, 120 S.E. 269, 272 (1923); LeVasseur v. Commonwealth, 225 Va. 564, 589, 304 S.E.2d 644, 657 (1983)).

Appellant's proffered Instruction B, refused by the trial court, was identical to Instruction B-1 with the exception of the following language substituted for the language discussed above in section B.1. Appellant's proffered Instruction B provided in pertinent part:

> If you find that the Commonwealth has proved beyond a reasonable doubt that Mr. Walshaw killed Ms. Tegeler, but failed to prove beyond a reasonable doubt that the killing was malicious, then you shall find Mr. Walshaw guilty of voluntary manslaughter, but you shall not fix the punishment until you have returned your verdict and heard further instruction.

- 15 -

Instruction B failed to instruct the jury that for it to convict of voluntary manslaughter, it must find that the killing was intentional.

Appellant further argues on appeal that the claimed error in granting Instruction B-1 was aggravated by Instructions D, G and K-1. He failed to present this argument regarding the impact of these other instructions on Instruction B-1 to the trial court. We will not consider an argument on appeal which was not presented to the trial court. Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998); see Rule 5A:18. Moreover, our review of the record does not reflect any reason to invoke good cause and the ends of justice exception to Rule 5A:18.

Finally, appellant argues that the trial court's giving of Instruction B-1 to the jury was not harmless error. Because we conclude that the trial court did not err in granting Instruction B-1, we need not apply a harmless error analysis.

Accordingly, we conclude that the trial court did not abuse its discretion in granting Instruction B-1 and denying appellant's Instruction B.

CONCLUSION

For the above reasons, we conclude that the indictment, in the statutory short form, fully informed appellant of the nature and cause of the accusation against him and complies with both the United States and Virginia Constitutions. We also conclude that the trial court did not err in granting Instruction B-1 and refusing to grant Instruction B. Accordingly, we affirm the conviction.

Affirmed.