COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Beales, Alston and Huff
Argued at Chesapeake, Virginia


DANIELLE LEE POLK

                                                    MEMORANDUM OPINION[*] BY
v.       Record No. 1091-12-1                       JUDGE GLEN A. HUFF
                                                    JULY 16, 2013
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                         Johnny E. Morrison, Judge

          Gregory K. Matthews (Gregory K. Matthews, P.C., on brief), for
          appellant.

          Susan M. Harris, Assistant Attorney General (Kenneth T.
          Cuccinelli, II, Attorney General, on brief), for appellee.


        Danielle Lee Polk ("appellant") appeals her conviction of obtaining money by false

pretenses, in violation of Code § 18.2-178.  Following a bench trial in the Circuit Court of the

City of Portsmouth ("trial court"), the trial court convicted appellant and sentenced her to three

years in prison, with one year and nine months suspended.  On appeal, appellant contends that

the trial court erred in 1) ruling that the indictment was sufficient when the indictment alleged

that appellant took "property" instead of "money," and the proof at trial showed that appellant

took money and not property; and 2) ruling that the evidence was sufficient to show that Tineal

Boney ("Boney") was the victim when the actual victim was Michael Witkowski ("Witkowski"),

the owner of the property in question.  For the following reasons, this Court affirms appellant's

conviction.

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.  BACKGROUND

On appeal, "'we consider the evidence and all reasonable inferences flowing from that evidence in the light most favorable to the Commonwealth, the prevailing party at trial.'" Williams v. Commonwealth, 49 Va. App. 439, 442, 642 S.E.2d 295, 296 (2007) (en banc) (quoting Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004)).  So viewed, the evidence is as follows.

On August 26, 2011, Boney met with appellant regarding appellant's online advertisement for a room for rent at 164 Butler Street in Portsmouth for $250 a month, with a $200 deposit.  After appellant informed Boney that her parents had given appellant the home and that it was her house, Boney gave appellant $200 in cash and received a key to the home.  Later that evening, Boney inspected the property and discovered that the key she received did not work in either the front door or the upstairs back door.  Boney was able to obtain entry, however, because the upstairs door was unlocked.  Although Boney did not move in that day, she subsequently changed the upstairs door's lock.

The week after the initial meeting, appellant informed Boney that she needed another payment, so Boney sent $120 to appellant in Baltimore by Western Union.  On September 9, 2011, appellant moved into the property even though the electricity was not turned on.  Boney informed appellant about the lack of electricity, and appellant stated she would have it turned on.  Appellant, however, failed to have the electricity turned on.  On September 13, 2011, Boney told appellant that she was going to have the power turned on the next day.  In response, appellant told Boney to give her the bill and that appellant would pay for it.

On September 17, 2011, Boney gave appellant a third payment of $100 when appellant came to her workplace.  That same day, appellant wrote the following rental agreement, which both parties signed:

I, Danielle Polk[,] recieved [sic] $100.00 on 9-17-11 towards [r]ent @ 164 Butler Rd. to Tineal Boney. Also [r]ecieved [sic] $320.00 on other dates. The $100.00 on today makes [$]420.00 total.

Danielle Polk [(signature)]

8.26.11 - $200.00

9.5.11 - $120.00

October Rent will be [$]0

I will take care of light [b]ill also when Tineal gives it to me. Bill is in her name.

Tineal Boney [(signature)]

The rental agreement was entered into evidence at trial without objection.

Near the end of September, Witkowski went to the home and discovered that the locks were changed on the back door, a new power meter was in place, and some personal items were in the home. On September 22, 2011, Witkowski contacted Detective W.J. Baker ("Baker"), with the Criminal Investigation Unit of the Portsmouth Police Department, and they went to the home together. Upon reaching the house, Witkowski and Baker entered the home through the downstairs front door. Boney, who was upstairs at the time, was startled by the noise coming from the front of the house and asked, "Who's there?" Witkowski and Baker announced themselves and informed Boney that Witkowski was the owner of the property. Boney told Baker that she was not aware that appellant did not own the home and gave Baker the signed rental agreement. After discussion, Witkowski let Boney remain a tenant, and Boney paid rent to Witkowski.

On February 2, 2012, the grand jury indicted appellant as follows:

**1. Obtaining Money or Property by False Pretense (FRD-2743-F9)**

On or about August 26, 2011, did obtain by false pretense or token, property belonging to Tineal Boney and valued at $200.00 or more

with the intent to defraud, in violation of § 18.2-178; 18.2-95 of the Code of Virginia (1950), as amended.

At trial on March 22, 2012, Witkowski testified that he knew appellant, who was a girlfriend of a friend of his, and that she had previously stayed with his family in Virginia Beach. With regard to the Portsmouth home, Witkowski stated that he allowed appellant to stay in the downstairs apartment in exchange for her cleaning and painting it in preparation for renting. Witkowski, however, specified that he never gave appellant permission to rent out the apartment.

At the conclusion of the Commonwealth's evidence, appellant made a motion to strike, arguing that there was a fatal variance between the indictment, which charged obtaining "property" by false pretenses, and the evidence at trial that appellant obtained "money" by false pretenses; and that the evidence was insufficient because Boney was not the actual victim. The trial court denied appellant's motion to strike.

Appellant then testified that Witkowski gave her permission to move into the upstairs apartment because the downstairs apartment was uninhabitable due to the presence of roaches, but she never did so because she had reconciled with her boyfriend. Appellant also stated that she told Witkowski she was thinking of renting out the upstairs room since she was unable to "do it on [her] own," and Witkowski had responded that "'[i]f you can get it together, that's fine.'" In addition, appellant admitted that she never told Witkowski that Boney had moved in, but claimed that it was because she did not know Boney had moved in yet because she had told Boney not to do so until the electricity had been turned on.

At the conclusion of trial, appellant renewed her two arguments in support of her motion to strike the evidence, which the trial court denied. This appeal followed.

II. ANALYSIS

On appeal, appellant contends that the trial court erred in 1) ruling there was no fatal variance between the indictment and the proof at trial; and 2) ruling that the evidence was sufficient to convict appellant of obtaining money by false pretenses.

A. Fatal Variance

Appellant first argues that the trial court erred in ruling that the indictment was sufficient when the indictment alleged that appellant took "property" instead of "money," and the proof at trial showed that appellant took "money" and not "property."

"Notice to the accused of the offense charged against him is the rockbed requirement which insures the accused a fair and impartial trial on the merits and forms the key to the fatal variance rule." Hairston v. Commonwealth, 2 Va. App. 211, 214, 343 S.E.2d 355, 357 (1986). "A variance occurs when the criminal pleadings differ from the proof at trial." Purvy v. Commonwealth, 59 Va. App. 260, 266, 717 S.E.2d 847, 850 (2011). "[A] variance will be deemed fatal 'only when the proof is different from and irrelevant to the crime defined in the indictment and is, therefore, insufficient to prove the commission of the crime charged.'" Id. at 267, 717 S.E.2d at 850 (quoting Stokes v. Commonwealth, 49 Va. App. 401, 406, 641 S.E.2d 780, 783 (2007)). "In short, the 'offense *as charged* must be proved.'" Id. (quoting Mitchell v. Commonwealth, 141 Va. 541, 560, 127 S.E. 368, 374 (1925)).

"Not every variance[, however,] is fatal. A 'non-fatal' variance is one that does not undermine the integrity of the trial and, thus, does not warrant a reversal on appeal." Id. at 266, 717 S.E.2d at 850 (citing Morris v. Commonwealth, 33 Va. App. 664, 668-69, 536 S.E.2d 458, 460 (2000)). Furthermore, "[e]rrors in '[m]ere matters of form [in an indictment will be rejected] where no injury [or prejudice] could have resulted therefrom to the accused.'" Scott v. Commonwealth, 49 Va. App. 68, 73, 636 S.E.2d 893, 895 (2006) (second, third, and fourth

alterations in original) (quoting <u>Griffin v. Commonwealth</u>, 13 Va. App. 409, 411, 412 S.E.2d 709, 711 (1991)).

"An indictment is a written accusation of a crime and is intended to inform the accused of the nature and cause of the accusation against him." <u>Hairston</u>, 2 Va. App. at 213, 343 S.E.2d at 357. "'When considering on appeal whether an indictment charged a particular offense, we limit our scrutiny to the face of the document.'" <u>Schwartz v. Commonwealth</u>, 45 Va. App. 407, 427, 611 S.E.2d 631, 641 (2005) (quoting <u>Moore v. Commonwealth</u>, 27 Va. App. 192, 198, 497 S.E.2d 908, 910 (1998)). "'An indictment need not be drafted in the exact words of the applicable statute so long as the accused is given notice of the nature and character of the offense charged.'" <u>Nelson v. Commonwealth</u>, 41 Va. App. 716, 736, 589 S.E.2d 23, 33 (2003) (quoting <u>Black v. Commonwealth</u>, 223 Va. 277, 282, 288 S.E.2d 449, 451 (1982)). Code § 19.2-220 provides, in pertinent part, that

> [t]he indictment or information shall be a plain, concise and
> definite written statement . . . describing the offense charged . . . .
> In describing the offense, the indictment or information may use
> the name given to the offense by the common law, or the
> indictment or information may state so much of the common law
> or statutory definition of the offense as is sufficient to advise what
> offense is charged.

"Rule 3A:6(a) also requires the indictment to 'cite the statute or ordinance that defines the offense . . . .'" <u>Walshaw v. Commonwealth</u>, 44 Va. App. 103, 109, 603 S.E.2d 633, 636 (2004). "'The inference to be drawn from the provisions of Code § 19.2-220 and Rule 3A:6(a) is clearly that incorporation by . . . reference of the statute cited in the indictment' provides adequate notice of the charges against the accused." <u>Id.</u> at 109-10, 603 S.E.2d at 636 (quoting <u>Thomas v. Commonwealth</u>, 37 Va. App. 748, 753, 561 S.E.2d 56, 58 (2002)). "But when the descriptive text of an indictment *narrows* the factual allegation, it limits the scope of the incorporation." <u>Purvy</u>, 59 Va. App. at 268, 717 S.E.2d at 851.

In the present case, the indictment charged that "[o]n or about August 26, 2011, [appellant] did obtain by false pretense or token, property belonging to Tineal Boney and valued at $200.00 or more with the intent to defraud, in violation of [Code] § 18.2-178; . . . ." Although the indictment utilized the word "property," we hold that the utilization of the word "property" instead of "money" did not exclude "money" from the crime defined in the indictment, such that it narrowed the factual allegation.

Code § 18.2-178(A) provides, in pertinent part, "[i]f any person obtain, by any false pretense or token, from any person, with intent to defraud, money, a gift certificate or other property that may be the subject of larceny, he shall be deemed guilty of larceny thereof . . . ." Even though the statute specifically delineates "money" and "a gift certificate" in addition to "other property," it did not, by doing so, indicate that money and gift certificates are no longer classified as property, albeit intangible property.[1] The plain language of the statute further conveys this fact by the legislature's utilization of the words "other property" rather than just "property" in setting forth the third item in the list. Accordingly, an indictment charging obtaining property by false pretenses necessarily includes within its scope obtaining money by false pretenses since money is a form of property.

The indictment in the present case utilized the word "property" in setting forth the nature and character of the offense charged and did not use the additional language in the statute of "other property that may be the subject of larceny." Thus, the indictment did not describe, limit,

---

[1] Black's Law Dictionary defines "personal property" as "[a]ny movable or intangible thing that is subject to ownership and not classified as real property," 1337 (9th ed. 2009), and "intangible property" as "[p]roperty that lacks a physical existence," id. at 1336. Furthermore, several federal courts have noted that property includes money. See United States v. Long, 538 F.2d 580, 581 n.1 (4th Cir. 1976) (affirming the trial court's jury instruction on possession of recently stolen property, which provided that "property includes money"); United States v. Poulin, 690 F. Supp. 2d 415, 425 n.8 (E.D. Va. 2010) (noting that "[d]efining personal property to include money is not necessarily unusual").

or qualify the factual allegation to the third item to the exclusion of "money" from the scope of the indictment. Therefore, appellant was informed of the nature and cause of accusation brought against her – obtaining property, i.e. money, by false pretenses. Thus, we hold that the trial court did not err in ruling there was no fatal variance between the indictment and the proof at trial.

### B. Sufficiency of the Evidence

Appellant next contends that the evidence was insufficient to support appellant's conviction of obtaining money by false pretenses on the ground that Boney was the victim when the actual victim was Witkowski, the owner of the property in question. Appellant argues that Boney was not the victim because Boney had received what she paid for.[2]

In a challenge to the sufficiency of the evidence, "we 'presume the judgment of the trial court to be correct,' and 'will not set it aside unless it is plainly wrong or without evidence to support it.'" Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002) (quoting Broom v. Broom, 15 Va. App. 497, 504, 425 S.E.2d 90, 94 (1992); Dodge v. Dodge, 2 Va. App. 238, 242, 343 S.E.2d 363, 365 (1986)). The reviewing court, under this standard, asks whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

As noted above, Code § 18.2-178 provides, in pertinent part, "[i]f any person obtain, by any false pretense or token, from any person, with intent to defraud, money, a gift certificate or other property that may be the subject of larceny, he shall be deemed guilty of larceny

---

[2] Appellant also asserts that the evidence was insufficient on the ground that she was free to convey her leasehold to Boney under property law because it was an oral lease and there was no provision expressly prohibiting her from subleasing. Appellant, however, fails to present any principles of law and authority in support of this assertion. See Rule 5A:20(e). Because we find this failure significant, we hold that appellant has waived her right to have this issue reviewed by this Court. Atkins v. Commonwealth, 57 Va. App. 2, 20, 698 S.E.2d 249, 258 (2010) ("'[W]hen a party's failure to strictly adhere to the requirements of Rule 5A:20(e) is significant, the Court of Appeals may . . . treat a[n assignment of error] as waived.'" (quoting Parks v. Parks, 52 Va. App. 663, 664, 666 S.E.2d 547, 548 (2008))).

thereof . . . ." "In order to sustain a conviction for larceny by false pretenses, the Commonwealth must prove: '(1) an intent to defraud; (2) an actual fraud; (3) use of false pretenses for the purpose of perpetrating the fraud; and (4) accomplishment of the fraud by means of the false pretenses used for the purpose, that is, the false pretenses to some degree must have induced the owner to part with his property.'" Riegert v. Commonwealth, 218 Va. 511, 518, 237 S.E.2d 803, 807 (1977) (quoting Bourgeois v. Commonwealth, 217 Va. 268, 272, 227 S.E.2d 714, 717 (1976)).

> A criminal false pretense has been defined as follows: "[T]he false representation of a past or existing fact, whether by oral or written words or conduct, which is calculated to deceive, intended to deceive, and does in fact deceive, and by means of which one person obtains value from another without compensation. According to the definition, the false pretense must be a representation as to an existing fact or past event. False representations amounting to mere promises or statements of intention have reference to future events and are not criminal within the statute, even though they induce the party defrauded to part with his property. But if false representations are made, some of which refer to existing facts or past events, while others refer solely to future events, a conviction may be had if it is shown that any of the representations as to existing facts induced the complaining witness to part with his property."

Parker v. Commonwealth, 275 Va. 150, 154, 654 S.E.2d 580, 582 (2008) (quoting Hubbard v. Commonwealth, 201 Va. 61, 66, 109 S.E.2d 100, 104 (1959)).

"The gravamen of the offense . . . is the obtainment of ownership of property, by false representations or pretenses." Quidley v. Commonwealth, 221 Va. 963, 966, 275 S.E.2d 622, 624 (1981) (citing R. Perkins, Criminal Law 306 (2d ed. 1969); 3 Wharton's Criminal Law § 423 at 455-56 (14th ed. 1980)). "But there is no requirement that the intended victim suffer actual pecuniary loss. Ultimate financial gain or loss to the victim is immaterial." Id. at 966, 275 S.E.2d at 625 (citations omitted). "The crime is complete when the fraud intended is consummated by obtaining the property sought by means of the false representations; and the

offense is not purged by ultimate restoration or payment to the victim." Id. (citations omitted). "It is sufficient if the fraud of the accused has put the victim in such a position that he may eventually suffer loss." Id. (citations omitted).

In Quidley, the Supreme Court rejected a similar argument to the one in the present case. Id. Quidley, a social worker, used fraudulent city welfare documents to "ostensibly" obtain clothing at a department store for a welfare recipient. Id. at 964, 275 S.E.2d at 624. Rather than giving the clothing to the welfare recipient, Quidley kept the clothing and gave some of the items to her accomplice. Id. at 965, 275 S.E.2d at 624. On appeal, Quidley argued that a fatal variance existed between the indictment and the proof since the indictment named the department store as the victim, yet the Social Service Bureau and the welfare recipient were the actual victims since the Bureau had paid for the clothing that was never received by the welfare recipient and since the department store had received payment for the goods. Id. The Supreme Court held that the department store was the victim because the crime charged was complete when Quidley "obtained ownership of the goods . . . from the [department store] through [the] use of fraudulent documents," and that she misconstrued the nature of the crime. Id. at 965-66, 275 S.E.2d at 624-25.

In the present case, we hold that the evidence was sufficient to support the trial court's conviction. Appellant told Boney that she owned the house at 164 Butler Street and that she could rent the room upstairs to her. As a result of the false representation, Boney paid appellant on three separate occasions, totaling $420. Like the defendant in Quidley, the crime charged was complete when appellant obtained ownership of the money from Boney based on her false representation that she owned the home and could rent it out. Accordingly, the trial court did not err in finding the evidence was sufficient to establish that appellant was guilty of obtaining money by false pretenses.

## IV.  CONCLUSION

Based on the foregoing, we hold that the trial court did not err in holding there was no fatal variance between the indictment and the proof at trial, and that the evidence was sufficient to convict appellant of obtaining money by false pretenses.  Accordingly, we affirm the trial court's conviction.

<u>Affirmed.</u>