*250 KELSEY, Judge.
Holly Jo South assaulted two United States Navy police officers serving at the Norfolk Naval Base. The trial court found her guilty of three counts of felony assault and battery of law-enforcement officers under Code § 18.2-57(C). South argues that the statute does not apply to the federal officers she assaulted. We agree, reverse the convictions, and remand for retrial on the misdemeanor offenses of simple assault and battery under Code § 18.2-57(A).[1]
I.
A. Law-Enforcement Officers Under Code § 18.2-57
Code § 18.2-57(C) makes it a Class 6 felony to commit “an assault and battery against another knowing or having reason to know that such other person is a law-enforcement officer as defined hereinafter----” Subsection E lists the categories of law-enforcement officers included within the reach of the statute:
As used in this section: “Law-enforcement officer” means any full-time or part-time employee of a police department or sheriffs office which is part of or administered by the Commonwealth or any political subdivision thereof, who is responsible for the prevention or detection of crime and the enforcement of the penal, traffic or highway laws of this Commonwealth, and any conservation officer of the Department of Conservation and Recreation commissioned pursuant to § 10.1-115, and game wardens appointed pursuant to § 29.1-200, and such officer also includes jail officers in local and regional correctional facilities, all deputy sheriffs, whether assigned to law-enforcement duties, court services or local jail responsibilities, auxiliary police officers appointed or provided for pursuant to §§ 15.2-1731 and 15.2-1733 and auxiliary deputy sheriffs appointed pursuant to § 15.2-1603.
*251 (Emphasis added.) If a victim does not fit within one of the listed categories (conservation officers, game wardens, jail officers, deputy sheriffs, and auxiliary officers), the statute does not apply unless the law-enforcement officer is an “employee of a police department or sheriff's office which is part of or administered” by the Commonwealth or local government. Id.
South assaulted two federal police officers employed by the United States Navy. Neither officer was an employee of a police department or sheriffs office that was part of, or administered by, the Commonwealth or any local government. The Navy employed, paid, and controlled both federal officers. Under the plain meaning of Code § 18.2-57(E), the federal officers do not fit within the statutory definition. “It is a fundamental principle of statutory construction that expressio unius est exclusio alterius, or ‘where a statute speaks in specific terms, an implication arises that omitted terms were not intended to be included within the scope of the statute.’ ” Conkling v. Commonwealth, 45 Va.App. 518, 522, 612 S.E.2d 235, 237 (2005) (quoting Commonwealth v. Brown, 259 Va. 697, 704-05, 529 S.E.2d 96,100 (2000)).
The Commonwealth argues that no policy justification supports the exclusion of federal police officers from the state felony assault and battery statute. Perhaps not — but when a statutory text speaks clearly on a subject, “effect must be given to it regardless of what courts think of its wisdom or policy.” Temple v. City of Petersburg, 182 Va. 418, 423, 29 S.E.2d 357, 358 (1944). We may not extend the meaning of the statute “simply because it may seem to us that a similar policy applies, or upon the speculation that, if the legislature had thought of it, very likely broader words would have been used.” Franklin & Pittsylvania Ry. Co. v. Shoemaker, 156 Va. 619, 624, 159 S.E. 100, 102 (1931) (quoting McBoyle v. United States, 283 U.S. 25, 27, 51 S.Ct. 340, 341, 75 L.Ed. 816 (1931) (Holmes, J.)).
The Commonwealth also contends our interpretation misses entirely the intent of the statute, which is to impose an *252 enhanced punishment on those who assault law-enforcement officers and thereby deter violence against them. Here again, we do not in the slightest denigrate this perceived legislative purpose.[2] But the “question here is not what the legislature intended to enact, but what is the meaning of that which it did enact. We must determine the legislative intent by what the statute says and not by what we think it should have said.” Carter v. Nelms, 204 Va. 338, 346, 131 S.E.2d 401, 406 (1963). When it chooses to do so, the General Assembly includes “law-enforcement agents of the Armed Forces of the United States” and other federal officers within the statutory meaning of “law-enforcement officer.” See, e.g., Code § 18.2-308(M); Code § 18.2-433.1.[3] It simply did not choose to do so in Code § 18.2-57(E).
B. Reciprocal Agreements Under Code § 15.2-1726
The Commonwealth also asserts that the federal officers possess arrest powers to enforce state law pursuant to a “reciprocal agreement” with the City of Norfolk authorized by Code § 15.2-1726. They should be treated, the Commonwealth argues, as the “functional equivalent” of state or local law enforcement officers for purposes of the assault-and-battery statute. We assume, without deciding, a “reciprocal agreement” exists between the City of Norfolk and the United States Navy.[4] Even with that assumption, the Commonwealth’s argument has no merit.
*253 Code § 18.2-57(E) incorporates by reference various officers identified in other provisions of state law — such as conservation officers under Code § 10.1-115, game wardens under Code § 29.1-200, auxiliary police officers under Code §§ 15.2-1731, 15.2-1733, and auxiliary deputy sheriffs under Code § 15.2-1603. Yet subsection E conspicuously omits any reference either to federal officers generally or to those specifically subject to reciprocal agreements under Code § 15.2-1726 (formerly codified at Code § 15.1-131.3), a statute that had been on the books for more than a decade before the enactment of Code § 18.2-57(E) (formerly codified at Code § 18.2-57.1). This omission has continued despite the many amendments to Code § 18.2-57 over the years.[5]
Nor does Code § 15.2-1726, of its own force, somehow incorporate itself into the criminal assault-and-battery statute. The relevant part of the statute provides:
Any locality may, in its discretion, enter into a reciprocal agreement with any other locality, any agency of the federal government exercising police powers, police of any state- *254 supported institution of higher learning appointed pursuant to § 23-233, or with any combination of the foregoing, for such periods and under such conditions as the contracting parties deem advisable, for cooperation in the furnishing of police services. Such localities also may enter into an agreement for the cooperation in the furnishing of police services with the Department of State Police. The governing body of any locality also may, in its discretion, enter into a reciprocal agreement with any other locality, or combination thereof, for the consolidation of police departments or divisions or departments thereof. Subject to the conditions of the agreement, all police officers, officers, agents and other employees of such consolidated or cooperating police departments shall have the same powers, rights, benefits, privileges and immunities in every jurisdiction subscribing to such agreement, including the authority to make arrests in every such jurisdiction subscribing to the agreement; however, no police officer of any locality shall have authority to enforce federal laws unless specifically empowered to do so by statute, and no federal law-enforcement officer shall have authority to enforce the laws of the Commonwealth unless specifically empowered to do so by statute.
(Emphasis added).
A reciprocal agreement under Code § 15.2-1726 cannot, by itself, contractually confer arrest authority on federal officers to enforce state law. Immediately after recognizing the reciprocal power of arrest, the statute includes a “however” proviso which confirms that, no matter what the agreement may say, “no federal law-enforcement officer shall have authority to enforce the laws of the Commonwealth unless specifically empowered to do so by statute.” Id. All the more, we question whether a reciprocal agreement under Code § 15.2-1726 can contractually confer upon a federal officer the “privilege” of special victim status reserved by the legislature solely for state and local officers under Code § 18.2-57(E).[6]
*255 We need not examine the question further, however, because nothing in the record discloses what the putative agreement in this case said. The Commonwealth did not introduce the agreement in evidence, or provide testimony from any witness about specific contractual terms, or make any unchallenged avowal about the subject. And whatever may be included among the “powers, rights, benefits, privileges and immunities” alluded to in the statute, they still remain “[sjubject to the conditions of the agreement,” as Code § 15.2-1726 makes clear.[7] Without that agreement or some testimonial evidence of its terms, we cannot assume anything in it purports to transform the federal officers South assaulted into employees “of a police department or sheriffs office which is part of or administered” by the Commonwealth or local government for purposes of Code § 18.2-57(E).
In the end, the Commonwealth’s argument is little more than a request that we add Code § 15.2-1726 to the list of statutes incorporated by reference by Code § 18.2-57(E). Granting this request would require us to “judicially graft” an unrelated provision into the statute “under the subtle guise of judicial interpretation,” Washington v. Commonwealth, 46 Va. *256 App. 276, 283, 616 S.E.2d 774, 778 (2005) (en banc) (citations and internal quotation marks omitted) — an exercise in which we have neither the authority nor the inclination to, engage.
II.
The trial court erred as a matter of law in convicting South under Code § 18.2-57(C) of felony assault and battery of the United States Navy police officers. We reverse these three felony convictions and remand the case for retrial on the lesser-included misdemeanor offenses of simple assault and battery under Code § 18.2-57(A).[8]

Reversed and remanded.

. The trial court also convicted South of driving under the influence of alcohol and assaulting a deputy employed by the Norfolk Sheriff's Office. South did not challenge those convictions.

. The federal criminal code directly addresses this subject. See 18 U.S.C. § 111(a)(1) (criminalizing assaults on federal officers engaged in "the performance of official duties").

. See also Code § 15.2-915.2 (exempting "law-enforcement officers or military personnel” from the prohibition of carrying a loaded firearm); Code § 18.2-85 (exempting members of the "armed forces of the United States” and “law-enforcement officers” from the prohibition on manufacturing or possessing explosive devices); Code § 18.2-287.4 (exempting "law-enforcement officers” and "military personnel” from the prohibition of carrying certain loaded firearms in public places).

. At trial, the Commonwealth did not introduce a reciprocal agreement into evidence. Nor did any witnesses once mention the existence of *253 any agreement of any sort. The federal officers testified only that, as they understood it, their "authority” to arrest under state law came “[fjrom the City of Norfolk.” Similarly, the word “agreement” never appears in any comments by the prosecutor during the trial. She argued only that the federal officers have a "special conservancy under a statute ... that allows them to issue summons.” When summarizing the evidence, however, the trial judge mistakenly recalled the federal officers testifying that their arrest powers stemmed from "a mutual agreement” with the City of Norfolk. Despite these evidentiary infirmities, we assume a reciprocal agreement under Code § 15.2-1726 exists only because South does not challenge that issue on appeal.

. This section's definition of "law-enforcement officer” was originally located in Code § 18.2-57.1 and was limited at its inception to "full-time employee[s] of a police department or sheriff’s office which is part of or administered by the Commonwealth or any political subdivision thereof.” 1983 Va. Acts, ch. 578. That definition was modified twice before 1997 when it was relocated to Code § 18.2-57. See 1994 Va. Acts, ch. 205 (adding conservation officers); 1994 Va. Acts, ch. 427 (adding part-time employees, auxiliaiy police officers, and auxiliary deputy sheriffs); 1997 Va. Acts, ch. 833. Since then, the definition has been changed twice more. See 2000 Va. Acts, ch. 288 (adding game wardens, jail officers, and deputy sheriffs); 2001 Va. Acts, ch. 129 (adding jail officers of regional facilities).

. Though other federal-state inter-governmental statutes exist, none apply to this case. See, e.g., Code § 15.2-1728 (authorizing a "mutual *255 aid agreement” over lands subject to the "exclusive jurisdiction” of the federal government); Code § 15.2-1729 (authorizing the "governing body of any county" to enforce county ordinances and state law on federal property). No evidence established the place of South’s arrest as being subject to exclusive federal jurisdiction, making Code § 15.2-1728 inapplicable. See generally Campbell v. Commonwealth, 39 Va.App. 180, 188, 571 S.E.2d 906, 910 (2002) (recognizing a "presumption in favor of concurrent jurisdiction” over federal lands in Virginia). And the City of Norfolk is not a county, making Code § 15.2-1729 inapplicable.

. The phrase "powers, rights, benefits, privileges and immunities” in Code § 15.2-1726 is not self-defining. Phrases like this usually describe the common law and statutory powers to seize persons and property, the protection from legal liability accompanying the proper performance of official duties, the employment-related accoutrements of the office, and legal entitlements of like kind. See, e.g., Code § 44-75.1:1(A) (describing the "benefits, privileges, immunities, or rights" of national guard personnel); Blackmon v. Lee, 12 F.R.D. 411, 412 (D.D.C. 1952) (noting the "rights, benefits, privileges or immunities” granted by Congress to veterans), affd, 205 F.2d 13 (D.C.Cir.1953).

. South does not challenge any other aspect of her assault-and-battery convictions. "When an appellant successfully challenges the sufficiency of the evidence on some (but not all) aspects of his conviction, we must determine if the proven elements of the original charge qualify as a lesser-included offense. If so, the appropriate remedy on appeal is a reversal of the conviction on the greater charge and a remand of the lesser charge for retrial — assuming the Commonwealth, in its prosecutorial discretion, chooses to go forward on the lesser charge.” Crowder v. Commonwealth, 41 Va.App. 658, 666, 588 S.E.2d 384, 388 (2003); see also Gorham v. Commonwealth, 15 Va.App. 673, 678, 426 S.E.2d 493, 496 (1993).