COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Judges Frank and Beales
Argued at Chesapeake, Virginia


CHRISTOPHER JAMES GUINYARD

                                              MEMORANDUM OPINION* BY
v.        Record No. 1185-06-1                JUDGE RANDOLPH A. BEALES
                                              JULY 31, 2007
COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                         Christopher W. Hutton, Judge

             Deborah Saunders (Kimberly Enderson Hensley, Assistant Public
             Defender; Office of the Public Defender, on brief), for appellant.

             Rosemary V. Bourne, Assistant Attorney General (Robert F.
             McDonnell, Attorney General, on brief), for appellee.


       Christopher James Guinyard (appellant) appeals from his conviction following a bench

trial for assault and battery on a law-enforcement officer in violation of Code § 18.2-57(C).  The

sole issue on appeal is whether a campus police officer employed by a private university located

within the Commonwealth fits within Code § 18.2-57(E)'s definition of a "law-enforcement

officer."  Finding that such an officer does not fit within that definition, we remand to the trial

court for sentencing on the lesser-included offense of assault and battery.

                                      BACKGROUND

       The facts relevant to this case are not in dispute.  On October 3, 2005, Christopher Jones

was employed and on duty as a campus police officer at Hampton University, which is a private

university located within the Commonwealth.  On that day, Jones encountered appellant, who

was standing in the middle of the street talking to a passenger in a vehicle.  As Jones, who was

_____

       * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

driving his police vehicle, "passed the [appellant], [appellant] turned around and he ran up to the vehicle and struck the roof of the [police] car and mirror." Jones then turned around his campus police vehicle in order to investigate further and activated the emergency equipment on his police car. Appellant "charged the car right before [Jones] could open the door and he started striking the car." As soon as Jones opened the door and exited the vehicle, appellant charged him. Jones commanded appellant to stay back and activated his ASP baton. Appellant "put both arms out and ran towards [Jones] in a grabbing and swinging motion." Jones struck appellant with the baton "six to ten times" while still commanding him to stay back. During the struggle, appellant grabbed Jones's wrist and tore off his watch. After Jones radioed for assistance, a woman from the gathering crowd called out to appellant. After his attention turned to the woman in the crowd, appellant tried to walk across the street and up a ditch. By that time, other officers had arrived, and appellant was taken into custody.

During his testimony, Jones stated the following with respect to his training and duties as a Hampton University campus police officer: Jones makes arrests for violations of the city and state codes; he prepares and executes search warrants; he completed his police training at the Hampton Roads Regional Academy of Criminal Justice alongside "local city officers, Hampton, Newport News, Portsmouth, Norfolk State, other universities, Port Police"; he graduated alongside "every other officer that graduated with [him] that worked for the municipality of Hampton" at a swearing-in ceremony administered by the Circuit Court for the City of Hampton; and finally, the Hampton University Police Department is accredited by the Commonwealth of Virginia's Department of Criminal Justice.

Appellant, in his motion to strike, argued that Officer Jones did not qualify as a law-enforcement officer under the definition of Code § 18.2-57(E), noting

> [Appellant's] not trying to escape the consequences or criminal liability for what took place that night. We are asking the Court to

consider that this does not meet the felony definition here of the standard for assault on a police officer. We would ask the Court to find him guilty of assault and battery, a Class 1 misdemeanor.

The trial court overruled appellant's motion to strike and found him guilty of assault and battery on a law-enforcement officer. The trial judge, however, advised, "Should either counsel find anything otherwise dispositive on the issue under 18.2-57(e), I will certainly listen to it at the time of sentencing." Appellant renewed his argument at sentencing, which the trial court again denied, finding "that the officer who testified in this case and was assaulted in this case was, in fact, in a status that was administered by the Commonwealth." The trial court subsequently sentenced appellant to twelve months incarceration with five months suspended. An appeal to this Court followed.

ANALYSIS

Code § 18.2-57(C) provides, in pertinent part,

if any person commits an assault or an assault and battery against another knowing or having reason to know that such other person is a judge, a law-enforcement officer as defined hereinafter . . . such person is guilty of a Class 6 felony, and, upon conviction, the sentence of such person shall include a mandatory minimum term of confinement of six months.

Code § 18.2-57(E) defines the term "law-enforcement officer":

*"Law-enforcement officer"* means any full-time or part-time employee of a police department or sheriff's office which is part of or administered by the Commonwealth or any political subdivision thereof, who is responsible for the prevention or detection of crime and the enforcement of the penal, traffic or highway laws of this Commonwealth, and any conservation officer of the Department of Conservation and Recreation commissioned pursuant to § 10.1-115, and game wardens appointed pursuant to § 29.1-200, and such officer also includes jail officers in local and regional correctional facilities, all deputy sheriffs, whether assigned to law-enforcement duties, court services or local jail responsibilities, auxiliary police officers appointed or provided for pursuant to §§ 15.2-1731 and 15.2-1733 and auxiliary deputy sheriffs appointed pursuant to § 15.2-1603.

- 3 -

Clearly, by formulating this definition, the General Assembly did not intend that all police officers would be included in the definition of "law-enforcement officer" because if it had, the General Assembly could easily have enacted language that said so.

As we explained in South v. Commonwealth, 47 Va. App. 247, 623 S.E.2d 419 (2005),

> If a victim does not fit within one of the listed categories (conservation officers, game wardens, jail officers, deputy sheriffs, and auxiliary officers), the statute does not apply unless the law-enforcement officer is an "employee of a police department or sheriff's office which is part of or administered" by the Commonwealth or local government.

Id. at 251, 623 S.E.2d at 420. When analyzing a statute that lists specific items such as Code § 18.2-57(E), we follow the oft-cited principle of statutory construction that provides, "[T]he mention of a specific item in a statute implies that other omitted items were not intended to be included within the scope of the statute." Smith Mt. Lake Yacht Club, Inc. v. Ramaker, 261 Va. 240, 246, 542 S.E.2d 392, 396 (2001). Because a campus police officer at a private university is not among those specifically mentioned in Code § 18.2-57(E), we hold that the General Assembly apparently did not intend to include private university campus police officers as a specific category within Code § 18.2-57(E).[1]

Our inquiry, therefore, necessarily turns to whether or not the victim in this case, Officer Jones, "is an 'employee of a police department or sheriff's office which is part of or administered' by the Commonwealth or local government." South, 47 Va. App. at 251, 623 S.E.2d at 420 (quoting Code § 18.2-57(E)). Because Hampton University is a private university,

---

[1] The General Assembly did include numerous specific groups as law-enforcement officers – some added by amending the statute in a more recent General Assembly session after the one in which the statute was first enacted. For example, in 2000 the General Assembly added "game wardens appointed pursuant to § 29.1-200," "jail officers in local correctional facilities, [and] all deputy sheriffs, whether assigned to law-enforcement duties, court services or local jail responsibilities" to Code § 18.2-57(E)'s definition of "law-enforcement officer." See 2000 Va. Acts, c. 288.

- 4 -

it is, accordingly, not "part of" the Commonwealth "or any political subdivision thereof." Code § 18.2-57(E). The Commonwealth points out that the trial court based its ruling on a finding that Officer Jones was "in a status that was *administered by* the Commonwealth," and, in so doing, "the trial court relied on Virginia Code § 23-232.1 and § 23-234, which establish procedures for the establishment of campus police departments for private institutions of higher education." (Emphasis added.)[2]

The Attorney General argues that once a campus police department at a private institution has met the training requirements of Code § 23-232.1, that department is then "*administered by* the Commonwealth." Code § 23-232.1 (emphasis added). However, the verb "administer" is defined as "to attend, manage," "to manage the affairs of," or "to direct or superintend the execution, use, or conduct of." Webster's Third New International Dictionary 27 (1981). By choosing the verb "administer" in Code § 18.2-57(E), the legislature intended to include, unless specifically mentioned categorically or otherwise "a part of" the Commonwealth, only those police departments whose day-to-day operations and affairs are managed by "the Commonwealth or any political subdivision thereof."

---

[2] Code § 23-232.1 grants the governing board of a private university the authority to establish a police force. But, in order

> to be qualified to use the word "police" to describe the department or its officers, any private college or university which establishes a campus police department shall require that each officer comply with the training or other requirements for law-enforcement officers established by the Department of Criminal Justice Services pursuant to Chapter 1 (§ 9.1-100 et seq.) of Title 9.1.

Code § 23-232.1. Code § 23-234 discusses the powers and duties of a campus police officer, stating, "A campus police officer appointed as provided in § 23-233 or appointed and activated pursuant to § 23-233.1 may exercise the powers and duties conferred by law upon police officers of cities, towns, or counties, and shall be so deemed . . . ." Code § 23-234 does not distinguish the powers and duties of a campus police officer at a public institution from those of a campus police officer at a private institution.

In South, where we held two officers employed by the United States Navy were not part of a police department administered by the Commonwealth, we noted that "[t]he Navy employed, paid, and controlled both federal officers." South, 47 Va. App. at 251, 636 S.E.2d at 421. Similarly, here Officer Jones was employed by, paid by, and controlled by privately owned Hampton University, not the Commonwealth of Virginia. The Commonwealth, in fact, concedes that "the state has no duties as to the day to day running of the campus police department," instead arguing that the Commonwealth "administers the training, certification, and accreditation process for [a] private campus police officer" and confers the same powers and duties upon campus police officers that it does upon "city [or county] police officers." While that may be true, as Code §§ 23-232.1 and 23-234 demonstrate, we are instead bound by the plain meaning of the verb "administer," which was specifically chosen by the General Assembly to define a "law-enforcement officer" under Code § 18.2-57(E). Moreover, Code § 9.1-103 expressly prohibits the Department of Criminal Justice Services, which oversees and establishes the training requirements for law enforcement officers, from "undertak[ing] direct operational responsibilities in law enforcement or the administration of criminal justice." In drafting that section, the General Assembly clearly limited the role of the Department of Criminal Justice Services to one of oversight and proscribed that department from managing the day-to-day operations of a law-enforcement agency.

As discussed above, "to administer," for purposes of this statute, means "to manage the affairs of" the police department, which the Commonwealth concedes the state does not do at a private university. As such, we hold that Officer Jones was not employed by a police department that is "administered by the Commonwealth or any political subdivision thereof." Furthermore, private university campus police officers are not included among the various groups of officers specifically listed as "law-enforcement officers" in the statute. A campus police officer at a

private university, therefore, is not a "law-enforcement officer" as defined by the current language of Code § 18.2-57(E).

CONCLUSION

The Virginia Supreme Court in <u>Commonwealth v. South</u>, 272 Va. 1, 630 S.E.2d 318 (2006), held that, upon a finding that the trial court erred in convicting appellant of felony assault and battery on a law-enforcement officer, the proper disposition is "to remand to the trial court for a new sentencing proceeding on the lesser-included offense of assault and battery, a Class 1 misdemeanor." <u>Id.</u> This is consistent with the relief sought in this appeal, as appellant requests that this Court "remand this matter for further proceedings on the lesser charge of simple assault and battery, a misdemeanor." Therefore, consistent with the Virginia Supreme Court's disposition of <u>South</u> and with our holding in this case, we reverse and remand this matter to the trial court with instructions to sentence appellant on the lesser-included Class 1 misdemeanor of assault and battery.

<u>Reversed and remanded.</u>