COURT OF APPEALS OF VIRGINIA


Present:    Judges Kelsey, Haley and Powell
Argued by teleconference


JAVAN FOX

MEMORANDUM OPINION[*] BY
v.      Record No. 0204-09-4             JUDGE JAMES W. HALEY, JR.
DECEMBER 22, 2009
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Randy I. Bellows, Judge

W. Michael Chick, Jr. (Greenspun, Shapiro, Davis & Leary, on
brief), for appellant.

Leah A. Darron, Senior Assistant Attorney General (William C.
Mims, Attorney General, on brief), for appellee.


I.

A jury found Javan Fox ("Fox") guilty of the felony of assault and battery of a law

enforcement officer, Metro Transit Police Officer N.T. McKee ("McKee"), in violation of Code

§ 18.2-57(C).  The parties do not dispute that the facts in evidence are sufficient to prove that

Fox committed an assault and battery against McKee.  Rather, the questions presented concern

whether McKee met the legal definition of "law enforcement officer" described in Code

§ 18.2-57(E).  If that definition applies, Fox's assault and battery of McKee is punishable as a

felony pursuant to subsection C of the statute.  Fox argues that his conviction should be reversed:

1) because the trial court erred in refusing to instruct the jury on the statutory definition of "law

enforcement officer"; and 2) because as a matter of law McKee was not a "law enforcement

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

officer" within the meaning of Code § 18.2-57(E). For the reasons that follow, we answer both questions in the negative, and, therefore, we must affirm Fox's conviction.

II.

Facts

The evidence was undisputed that on January 9, 2008 Fox fell asleep on a Metro train, missed his stop in Washington, D.C., and emerged from the train at the Metro station in Falls Church, Virginia. When Fox went to the find the station manager, Rosa Morton ("Morton"), it was nearly midnight and the Metro station was closing. Morton told Fox that the last train to Washington had left the station already and that Fox would need to use a bus or taxi instead of the train. According to Morton, she told Fox that she needed to lock up and she asked him to leave. When Fox refused to do so, she called the Metro Transit Police.

When McKee responded to Morton's call, he was in uniform and wore a badge identifying him as a member of the Metro Transit Police. McKee told Fox that no more trains were leaving for Washington that evening, and warned that Fox would be arrested for trespassing if he refused to leave the station. According to McKee, Fox walked with McKee toward the station exit, but then Fox turned around to face McKee, and he told McKee that he was not leaving. McKee testified Fox struck him with his fist.

On cross-examination, defense counsel elicited testimony from McKee that McKee was an employee of Metro Transit Police, based in Washington, D.C., that McKee's paychecks came to him from an office in Washington, D.C., and that McKee did not directly work for the Commonwealth of Virginia, Fairfax County or the City of Falls Church.

At the close of the Commonwealth's evidence, McKee stressed this testimony in his motion to strike the Commonwealth's evidence. He argued that McKee, as an officer of the

- 2 -

Metro Transit Police, did not meet the definition of "law enforcement officer" described in Code § 18.2-57(E) because McKee was not an "employee of a police department or sheriff's office which is part of or administered by the Commonwealth or any political subdivision thereof" and that the court should strike the language in the indictment charging Fox with the felony of assault and battery of a law enforcement officer, and instead submit to the jury only the lesser-included misdemeanor offense of assault and battery. The Commonwealth argued that pursuant to the Washington Metropolitan Area Transit Authority Compact ("the WMATA Compact"), Metro Transit Police officers are employees of the Commonwealth for the purposes of the statute. The trial court requested written briefs from the parties, and took Fox's motion under advisement. In a letter opinion, dated November 20, 2008, the trial court eventually denied Fox's motion to strike. At the close of all the evidence, Fox proposed jury Instruction K. Tracking language from Code § 18.2-57(E), Instruction K reads as follows: "A person is a 'law enforcement officer' only if he or she is a full-time or part time employee of a police department which is part of or administered by the Commonwealth or any political subdivision thereof." Over Fox's objection, the trial court refused this instruction. The jury convicted Fox of assaulting a law enforcement officer, and this appeal followed.

III.

Analysis

A) Did the trial court err in refusing jury Instruction K?

Fox's first assignment of error concerns his proposed jury Instruction K. "A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" Chibikom v. Commonwealth, 54 Va. App. 422, 425, 680 S.E.2d 295, 296 (2009) (quoting Darnell v.

Commonwealth, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988)).  "It is elementary that a jury must be informed as to the essential elements of the offense; a correct statement of the law is one of the 'essentials of a fair trial.'"  Darnell, 6 Va. App. at 488, 370 S.E.2d at 719 (quoting Dowdy v. Commonwealth, 220 Va. 114, 116, 255 S.E.2d 506, 508 (1979)).  "Instructions are to be read in connection with the evidence to which they are intended to apply."  Carroll v. Hutchinson, 172 Va. 43, 52, 200 S.E. 644, 648 (1939).  Moreover, the trial court has broad discretion over whether to give or deny proposed jury instructions.  See Gaines v. Commonwealth, 39 Va. App. 562, 568, 574 S.E.2d 775, 778 (2003) (*en banc*).

But the jury is not responsible for resolving every issue that is disputed by the parties.  "It is a fundamental maxim, that the court responds to questions of law, and the jury to questions of fact."  McDowell's Ex'r v. Crawford, 52 Va. (11 Gratt.) 377, 402 (1854).  "Questions of law are for the court and it is improper to submit such questions to the jury, and an instruction that would submit a question of law to the jury is properly refused."  Ronald J. Bacigal & Joseph S. Tate, Virginia Jury Instructions § 2:02, at 7 (2005).

> "My opinion is that the jury are no more judges of the law in a capital or other criminal case upon a plea of not guilty, than they are in every civil case tried upon the general issue.  In each of these cases their verdict in general is necessarily compounded of law and fact, and includes both.  In each they must necessarily determine the law as well as the fact.  In each, they have the physical power to disregard the law as laid down to them by the court.  But I deny that in any case, civil or criminal, they have the moral right to decide the law according to their own notions or pleasure.  On the contrary, it is the duty of the court to instruct the jury as to the law, and it is the duty of the jury to follow the law as it is laid down by the court.  If I thought that the jury were the proper judges of the law in criminal cases, I should hold it my duty to abstain from the responsibility of stating the law to them upon any such trial."

Sims v. Commonwealth, 134 Va. 736, 763, 115 S.E. 382, 391 (1922) (quoting Justice Story's charge to the jury in United States v. Battiste, 24 F. Cas. 1042, 1043 (1835)).

Relying on United States v. Gaudin, 515 U.S. 506 (1995), Fox argues that the trial court's refusal to give jury Instruction K violated his right to have the jury determine his guilt as to every element of the crime charged. In Gaudin, the defendant was convicted of making a materially false statement in a matter within the jurisdiction of a federal agency. Id. at 507. The trial court instructed the jury that: "[t]he issue of materiality . . . is not submitted to you for your decision but rather is a matter for the decision of the court. You are instructed that the statements charged in the indictment are material statements." Id. at 508. The United States Supreme Court affirmed the decision of the Ninth Circuit Court of Appeals reversing the defendant's conviction, because it was "uncontested" that the materiality of defendant's statement was an element required for a conviction under 18 U.S.C. § 1001, id. at 509, and, therefore the trial court infringed the defendant's right to "have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged," id. at 522-23.

Gaudin is easily distinguished from Fox's case because Instruction H, the charging instruction, which the trial court granted, instructed Fox's jury that the Commonwealth must prove beyond a reasonable doubt: "(3) That N.T. McKee was engaged in the performance of his public duties as a law-enforcement officer at the time Mr. Fox committed the assault and battery." When the jury receives numerous instructions it must consider the instructions as a whole in light of all the evidence. Walshaw v. Commonwealth, 44 Va. App. 103, 119, 603 S.E.2d 633, 641 (2004). "'Juries are presumed to follow their instructions.'" Green v. Young, 264 Va. 604, 611, 571 S.E.2d 135, 139 (2002) (quoting Zafiro v. United States, 506 U.S. 534, 540 (1993)). Unlike Gaudin, there was no jury instruction in this case purporting to relieve the

Commonwealth of its burden of proof with respect to any element of Code § 18.2-57(C). Instead, the jury was instructed that proof that McKee was a police officer engaged in the performance of his public duties was essential for conviction. Thus, the refusal of Instruction K did not permit the jury to convict the defendant without proof of an element of the offense.

Even so, Fox emphasizes that Instruction K remains a correct statement of the law; its language comes directly from the text of Code § 18.2-57(E), and McKee's status as a law enforcement officer within the statute's meaning was a disputed issue in the case. To intelligently determine whether the Commonwealth's evidence proved that McKee was a law enforcement officer, the argument continues, the jury needed to know what the statutory definition of a law enforcement officer was. It is true that jury instructions providing further definition of terms already listed as elements of the offense are sometimes appropriate, depending on the facts of the case. See e.g. Strickler v. Murray, 249 Va. 120, 129, 452 S.E.2d 648, 652 (1995) (jury was properly instructed on definition of "deadly weapon" an element of capital murder in the commission of a robbery while the defendant was armed with a deadly weapon); Tuggle v. Commonwealth, 228 Va. 493, 509, 323 S.E.2d 539, 548 (1984) (jury was properly instructed on definition of "sexual intercourse" an element of capital murder during the commission of, or subsequent to, rape), vacated on other grounds, 471 U.S. 1096 (1985); cf. Miller v. Commonwealth, 5 Va. App. 22, 24-25, 359 S.E.2d 841, 842 (1987) (jury instructed on definition of "maliciously" an element of malicious wounding). We might agree with Fox that the refusal of jury Instruction K was erroneous, if the record included any conflicting factual evidence on the issue of whether McKee was an employee of the Metro Transit Police. If there were such evidence, then this instruction might be necessary to "cover all issues which the evidence fairly raises." Chibikom, 54 Va. App. at 425, 680 S.E.2d at 296. But the record on this

point is overwhelming and undisputed. McKee testified he worked for Metro Transit Police. He wore a uniform and badge identifying himself as a Metro Transit Police officer, and he arrived at the East Falls Church Metro train station within minutes of a telephone call to Metro Transit Police from Morton, the station's manager. Fox's argument – both at trial and before this Court – was not a claim that the facts suggested that McKee was really a private security guard or an officious fellow-passenger. The argument was that, even if McKee *was* a Metro Transit Police officer, Fox's conduct could not be a felony because the Metro Transit Police do not meet the *legal* definition of "law enforcement officer" as that term is defined in Code § 18.2-57(E).

We believe it was within the discretion of the trial court to refuse proposed jury Instruction K because, under these circumstances, the instruction was an attempt to present to the jury what is properly a question of law for the court. This conclusion follows from our decision in Cline v. Commonwealth, 53 Va. App. 765, 675 S.E.2d 223 (2009). In Cline, a panel of this Court held that the question of whether a special agent of the Virginia Department of Alcoholic Beverage Control was a law enforcement officer within the meaning of Code § 18.2-57(E) was "a pure question of law, which we review *de novo*." Id. at 767, 675 S.E.2d at 225. Given the absence of any factual dispute as to whether McKee was a Metro Transit Police officer, the same conclusion is appropriate here.

### B) Is a Metro Transit Police officer a "Law Enforcement Officer" pursuant to Code § 18.2-57(E)?

We now consider whether Metro Transit Police officers are "law enforcement officers" for the purposes of Code § 18.2-57(E). As indicated above, we review *de novo* the trial court's ruling on this question. "Code § 18.2-57(C) makes it a Class 6 felony to commit 'an assault and battery against another knowing or having reason to know that such other person is . . . a law-enforcement officer as defined hereinafter . . . .'" Cline, 53 Va. App. at 767, 675 S.E.2d at

- 7 -

223. At the time of Fox's assault and battery of McKee,[1] subsection E defined "law enforcement officer" as follows:

> any full-time or part-time employee of a police department or sheriff's office which is part of or administered by the Commonwealth or any political subdivision thereof, who is responsible for the prevention or detection of crime and the enforcement of the penal, traffic or highway laws of this Commonwealth, any conservation officer of the Department of Conservation and Recreation commissioned pursuant to § 10.1-115, conservation police officers appointed pursuant to § 29.1-200, and full-time sworn members of the enforcement division of the Department of Motor Vehicles appointed pursuant to § 46.2-217, and such officer also includes jail officers in local and regional correctional facilities, all deputy sheriffs, whether assigned to law-enforcement duties, court services or local jail responsibilities, auxiliary police officers appointed or provided for pursuant to §§ 15.2-1731 and 15.2-1733 and, auxiliary deputy sheriffs appointed pursuant to § 15.2-1603.

Fox argues that McKee did not meet this definition because Metro Transit Police are not mentioned anywhere in the statutory text, even though other kinds of police officers, such as conservation officers and game wardens, are expressly included. The trial court rejected this argument, holding that the Metro Transit Police are a police department administered by the Commonwealth pursuant to the WMATA Compact. "The purpose of this Compact, codified in Code §§ 56-529 and -530, was to improve transit service in the Metropolitan Area of Washington, D.C." Washington Metro. Area Transit Auth. v. Briggs, 255 Va. 309, 311, 497 S.E.2d 139, 140 (1998). Virginia accepted the Compact pursuant to 1958 Va. Acts, ch. 627. According to Title III, Article 1, section (d) of the Compact, "'Signatory' means the State of Maryland, the Commonwealth of Virginia and the District of Columbia;" and according to Article 3, section 4 of the same title, the Washington Metropolitan Area Transit Authority is "an

---

[1] Effective July 1, 2009, Code § 18.257(E) was amended to include in the definition: "police officers of the Metropolitan Washington Airports Authority pursuant to § 5.1-158."

instrumentality and agency of each of the signatory parties hereto . . . ." As our Supreme Court stated in Briggs, "WMATA is a part of the state government . . ." 255 Va. at 312, 497 S.E.2d at 141.

> Section 76(a) of the Compact authorizes the WMATA:

> to establish and maintain a regular police force, to be known as the Metro Transit Police, to provide protection for its patrons, personnel and Transit facilities. The Metro Transit Police shall have the powers and duties and shall be subject to the limitations set forth in this section. It shall be composed of both uniformed and plain clothes personnel, and *shall be charged with the duty of enforcing the laws of the Signatories*, and the laws, ordinances, and regulations of the political subdivisions thereof in the Transit Zone, and the rules and regulations of the Authority.

(Emphasis added). According to the plain language of the Compact, the Metro Transit Police are a police department administered by the WMATA, which is expressly defined as an agency of each of the signatories to the Compact, including Virginia. The text of the Compact further charges the Metro Transit Police with the duty of enforcing the laws of the signatories, including Virginia, within the Transit Zone. We agree with the trial court that these provisions establish that an officer of the Metro Transit Police meets the definition of a "law enforcement officer" described in Code § 18.2-57(E).

We also disagree with Fox's argument that our decision in South v. Commonwealth, 47 Va. App. 247, 623 S.E.2d 419 (2005), rev'd in part on other grounds, 272 Va. 1, 630 S.E.2d 318 (2006), compels a different result. In South, the defendant was convicted of the felony of assaulting a law enforcement officer in violation of Code § 18.2-57(C) for assaulting two United States Navy police officers in the City of Norfolk, id. at 250, 623 S.E.2d at 420, and this Court reversed her felony convictions, id. at 256, 623 S.E.2d at 423. "South assaulted two federal police officers employed by the United States Navy. Neither officer was an employee of a police

department or sheriff's office that was part of, or administered by, the Commonwealth or local government. The Navy employed, paid, and controlled both federal officers." Id. at 251, 623 S.E.2d at 420-21. We also considered and rejected the Commonwealth's argument that the Navy police were the "functional equivalent" of state or local law enforcement officers for the purposes of the assault and battery statute, pursuant to a "reciprocal agreement" under Code § 15.2-1726, which authorizes agreements between local governments and other specified entities "for cooperation in the furnishing of police services." We questioned whether such an agreement "can contractually confer upon a federal officer the 'privilege' of special victim status reserved by the legislature solely for state and local officers under Code § 18.2-57(E)." South, 47 Va. App. at 254, 623 S.E.2d at 422. Yet the case did not require a ruling on whether the terms of a reciprocal agreement under Code § 15.2-1726 could confer such status, because no agreement between the Navy and the City of Norfolk was introduced into evidence.

> Without that agreement or some testimonial evidence of its terms, we cannot assume anything in it purports to transform the federal officers South assaulted into employees "of a police department or sheriff's office which is part of or administered" by the Commonwealth or local government for the purposes of Code § 18.2-57(E).

Id. at 255, 623 S.E.2d at 423.

Fox argues that South demands that the Commonwealth admit the Compact into evidence before the terms of the Compact may transform an officer of the Metro Transit Police into a "law enforcement officer" within the meaning of Code § 18.2-57(E). We disagree. First, the WMATA Compact is not a reciprocal agreement under Code § 15.2-1726. Interstate compacts are essentially contracts between states, which must be approved by the United States Congress. See U.S. Const., art. I, § 10; Oklahoma v. New Mexico, 501 U.S. 221, 236 n.5 (1987) ("a congressionally approved compact is both a contract and a statute"). Code § 15.2-1726 instead

authorizes agreements between "any locality" and any other locality or any of certain other enumerated entities exercising police powers. And unlike the alleged agreement between the Navy and the City of Norfolk, we know what the Compact says. The Compact was enacted by the General Assembly, it is codified at Code §§ 56-529 and -530, and the full Compact is published in the "Compacts" Volume of the current Code of Virginia of 1950, 2001 Replacement Volume. Pursuant to the Compact, the Metro Transit Police are a police department administered by the WMATA, an agency of the Commonwealth. In South, the undisputed evidence was that the officers were employees of a police department administered by the United States Navy, which is not an agency of the Commonwealth. 47 Va. App. at 251, 623 S.E.2d at 421. Accordingly, we do not believe South controls the outcome of this case.

IV.

Conclusion

We hold that the trial court did not err in denying Fox's proposed jury Instruction K. We further hold that the trial court did not err in denying Fox's motion to strike. Accordingly, we affirm Fox's conviction for the felony of assaulting a law enforcement officer in violation of Code § 18.2-57(C).

Affirmed.
